IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADELAIDO SAMUEL TRUJILLO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SERGEANT TALLY; SERGEANT PAYTON, )<br>CORRECTIONS OFFICER COBB; )<br>CORRECTIONS OFFICER ACESS; JOHN )<br>DOE ONE; and JOHN DOE TWO; )<br>)<br>Defendants. )<br>_____) | Case No. CV03-533-S-MHW<br><br>**MEMORANDUM ORDER** |

Pending before the Court in this prisoner civil rights action are Defendants' Motion for Summary Judgment (Docket No. 84), Plaintiff's Motions for Extension of Time (Docket Nos. 102, 104 & 110), and Defendants' Motion to Strike Plaintiff's Response to Motion for Summary Judgment (Docket No. 109). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Having reviewed the record in the case, and having considered the arguments of the parties, the Court enters the following Order.

**MEMORANDUM ORDER - 1**

I.

## MOTION FOR SUMMARY JUDGMENT

### A.   Background

Plaintiff, a Washington state prisoner who was formerly incarcerated at the Idaho Maximum Security Institution (IMSI), brings three claims in his Complaint.  First, he asserts that Defendants deliberately "set up" a situation in which an inmate was allowed to kick him in the abdomen and groin.  Second, he asserts that Defendants denied him medical care for several days thereafter, despite his severe pain.  He also alleges that Defendants repeatedly harassed him.  Plaintiff has since been transferred back to Washington.  Defendants assert that they are entitled to summary judgment on each of Plaintiff's claims.

### B.   Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of

**MEMORANDUM ORDER  2**

any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

      The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

      Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**MEMORANDUM ORDER  3**

**C.     Discussion**

   1.   <u>Failure to Protect Claim</u>

Plaintiff alleges that Defendants "set up" a situation in which they knew that Byron Crofts, an inmate who did not like Plaintiff would be able to assault him. To prevail on an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Eighth Amendment. *Id.*, 511 U.S. at 828. "Deliberate indifference" requires a showing that the official was "subjectively aware of the risk." *Id.*, 511 U.S. at 829.

In *Berry v. Sherman*, 365 F.3d 631 (8th Cir. 2004), the plaintiff alleged that prison officials had failed to protect him from the attack of another inmate. There, the court held that "the undisputed evidence indicates that no one, including Berry, believed he was at 'substantial risk of serious harm.'" *Id.* at 634.

Similarly, the undisputed facts show that neither Plaintiff nor the officers were aware that Inmate Crofts was going to attack Plaintiff. Crofts and Plaintiff resided in adjacent cells in administrative segregation (B Block). Both inmates had a history of aggressive behavior. Plaintiff alleges that Crofts began to harass him by swearing at him through the ventilation system. Plaintiff retaliated by repeatedly flushing his toilet to annoy Crofts.

**MEMORANDUM ORDER  4**

On March 19, 2001, Officers Talley, Cobb, and Dietz were systematically searching B Block cells for a missing food tray. Dietz escorted an inmate out of his cell to allow Cobb to search the cell. At the same time, Talley was at the next cell removing the next inmate so that Cobb could proceed directly to a search of the next cell. This process was repeated as they covered B Block. As Dietz escorted Inmate Crofts back to his cell, and Talley escorted Plaintiff from his cell, Crofts lunged over and kicked Plaintiff in the abdomen. The officers immediately restrained Crofts and brought him to the ground.

Plaintiff's allegations that Defendants conspired to set him up to be attacked by Crofts are based upon mere speculation. There are no facts showing that officers were aware that they placed Plaintiff in a position of substantial risk of serious harm by allowing Crofts to walk by him. There is no evidence that Plaintiff had made complaints to officers that Crofts was harassing Plaintiff; neither is there any evidence that Crofts complained to officers that Plaintiff was harassing Crofts. In short, there is nothing in the record showing that officers knew that Plaintiff and Crofts were having difficulties with each other.

Plaintiff's deposition testimony confirms the lack of notice of a potentially harmful situation:

Q. So, you didn't have any idea that Crofts had a problem with you?

A. I never seen [sic] the man or knew him.

**MEMORANDUM ORDER  5**

*Deposition Transcript*, at 15:11-13 (attached to Affidavit of Plaintiff, Docket No. 79).

Similarly, there is nothing in the record to show that Crofts kicked Plaintiff as a result of (1) a conspiracy among the officers to allow him to harm Plaintiff or, (2) a conspiracy among the officers and Crofts.  Rather, Crofts told officers that he kicked Plaintiff because Plaintiff had told him that he was going to "stick" Crofts when Plaintiff was out of his cell.  In his deposition, Plaintiff stated that he believed Crofts kicked him because Plaintiff had been annoying Crofts by repeatedly flushing the toilet.  *Id*., at 17:7-17.

Plaintiff has brought forward no evidence showing that Defendants (including prospective Defendant Officer Dietz) knew or should have known that Crofts would attack Plaintiff as they performed a cell search.  Plaintiff has no personal knowledge or evidence to show (1) that Defendants were not really searching cells for a missing food tray; (2) that Defendants had not searched other cells prior to his cell; (3) that Dietz faked a chipped elbow; (3) that Defendants created fake incident reports; or (4) that  Defendants gave Croft the "okay" to call Plaintiff names and cuss at him through the ventilation system.  These allegations are mere speculation.

Plaintiff also alleges that the manner in which the officers moved the inmates was contrary to prison regulations.  He alleges that two officers should have been used to move the inmates, not just one.  The prison regulations governing inmate movement provided by Defendants do not show that Defendants moved Crofts in violation of prison

**MEMORANDUM ORDER  6**

regulations, as Plaintiff alleges.  *See Affidavit of Plaintiff*, Exhibit p. 65 (Docket No. 36); *see Affidavit of Lieutenant Rodney Schlienz*, at ¶ 7 (Docket No. 87).

The Court concludes that Plaintiff has not provided sufficient evidence to show that he was incarcerated under conditions posing a substantial risk of serious harm, or that Defendants (including potential Defendant Dietz) were deliberately indifferent. Accordingly, summary judgment on this claim is warranted.

2.  Inadequate Medical Care Claim

For an inmate to state a claim under § 1983 for denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  Here, Plaintiff's injury occurred on March 19, 2002.  He alleges that he suffered approximately five days' intense pain.  The Court finds that the length of time he suffered and the severity of the pain alleged removes this injury from the *de minimis* injury category.

Approximately thirty minutes (Defendants' estimate) to two hours and twenty minutes (Plaintiff's estimate) after the incident, Officer Talley told Correctional Medical Specialist Earl Callahan (John Doe I in the Complaint) that Plaintiff needed to be seen as a result of the kicking incident.  *See Affidavit of Bruce Talley*, Exhibit A (Docket No. 89). Plaintiff alleges that Callahan merely peered through the window of his cell and asked him to raise his t-shirt and show him the injured area.  Callahan did not offer him any pain

**MEMORANDUM ORDER  7**

medication. Callahan's report states that Plaintiff complained of "abdominal pain and no other injuries." *See Affidavit of Plaintiff*, Exhibit No. 000023 (Docket No. 36). Because of the allegation of Callahan's failure to assess Plaintiff in a more thorough manner, the Court shall give Plaintiff leave to amend his Complaint to add Earl Callahan as the true name of John Doe. Plaintiff is advised that he will have to show deliberate indifference, not medical negligence, in order to be successful under the Eighth Amendment.

Callahan's "examination" of Plaintiff occurred on March 19, 2002, within hours of the incident. Plaintiff alleges that, later on March 19, he pressed his emergency button several times to ask for additional medical help, and that no one summoned medical help for him. He is unable to identify the officers who were working during this time period. After several of Plaintiff's unsuccessful attempts to obtain help, Sergeant Talley and another officer entered Plaintiff's cell and viewed his injury with a flashlight. They did not act on Plaintiff's request for medical attention or pain medication.

Based on the current state of the law, these facts present a jury question. On the one hand, "prison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 337-38 (D. N.C. 2005). On the other hand, if an inmate continues to complain after he has had a cursory initial medical examination, officers who ignore the continuing complaints may be deliberately indifferent. *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987).

**MEMORANDUM ORDER  8**

Because a jury could determine that the officers were deliberately indifferent to Plaintiff's condition, the Court will allow Plaintiff to proceed against Defendant Talley on this claim and to amend the Complaint to add the true name of the second officer if Plaintiff can discover his identity within the next sixty (60) days.

On March 20, 2002, the day after the incident, Plaintiff completed a Health Services Request form, stating: "On 3/19/02, I was kicked above the groin area[;] I am in pain and require an examination, please."  *Id*., Exhibit No. 000040.

Two days after the incident, on March 21, between 8:00 a.m. and 3:00 p.m., Defendant Acree is alleged to have ignored Plaintiff's verbal request for medical treatment.  This, too, presents a jury question, as Plaintiff had gone without follow-up medical care for approximately 48 hours, despite many complaints of pain.

Plaintiff also alleges that he gave Sergeant Payton an inmate concern form about his need for medical attention on or about March 21, 2002.  Plaintiff said that Sergeant Payton put the concern form in his pocket and went to lunch.  Again, these facts present a jury question.

At Plaintiff's examination on March 21, 2002, a nurse determined that Plaintiff had swelling in the right quarter pelvis and right scrotum.  No abnormal tissue was felt in the scrotum.  Plaintiff was provided with Ibuprofen for pain.  *Id.*, Exhibit No. 000040.  The nurse told him that a doctor would see him on March 23, 2002.  *See id*., Exhibit No. 000035.  He was not seen on that date.  The reason the doctor did not see him is

**MEMORANDUM ORDER  9**

unknown.

On March 23, 2002, Plaintiff alleges that he became fed up with unknown officers walking by his cell, kicking the door, and yelling, "How's your health?" As a result, he began a hunger strike.

On March 25, 2002, Plaintiff completed a second Health Services Request form. He was seen by a nurse on March 26, 2002. His urinalysis test was negative. The nurse determined that he was still healing. By that time, Plaintiff was on a hunger strike, and his urinalysis showed that his body was using protein as a result of his refusal to eat. *See id.*, Exhibit No. 000036. The nurse told him he could not have Ibuprofen because of his hunger strike, but that he could use Tylenol. *Deposition Transcript*, at 32:7-12 (attached to Affidavit of Plaintiff, Docket No. 79).

As to the medical claims, the Court concludes that Plaintiff may proceed against (1) John Doe I (Earl Callahan) for his alleged failure to provide medical care when he merely peered in Plaintiff's window on March 19, 2002; (2) against Sergeant Talley and John Doe II for their examination of Plaintiff with a flashlight as a failure to provide adequate medical care on March 19, 2002; (3) against Officer Acree for ignoring his verbal requests for medical care on March 21, 2002; and (4) against Sergeant Payton for placing the medical request form in his pocket and going to lunch rather than acting on it on March 21, 2002.

**MEMORANDUM ORDER  10**

### 3.  Eighth Amendment Harassment Claim

Plaintiff asserts that correctional officers in Washington would whistle in a high-pitched manner and fake cough repeatedly in his presence, simply to annoy him. *See Deposition Transcript*, at pp. 25-27 (attached to Affidavit of Plaintiff, Docket No. 79). Plaintiff asserts that when he arrived in Idaho, officers began harassing him in the receiving unit by refusing to allow him to use the bathroom. *Id*. at pp. 26-27. He also asserts that shortly after he was transferred to B Block, on his visit to the dentist, the accompanying officer and the dental hygienist faked coughs in his presence. *Id*. at pp. 28-29. He asserts that correctional officers continued to whistle and fake cough in his presence. *Id*. at pp. 25-27. He also alleges that officers bent the corners of his condiment packages and mix up his food before serving it to him. *Complaint*, at p. 15 (Docket No. 4).

Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The United States Supreme Court has recently reiterated that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002) (internal citations and punctuation omitted. Further, in *McKune v. Lile*, 536 U.S. 24, – (2002), the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the

**MEMORANDUM ORDER  11**

[facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not."

Against this backdrop of law, the Court concludes that Plaintiff's allegations do not arise to the level of a Constitutional violation. The Court agrees with Defendants that Plaintiff's case is much like *Johnson v. Unknown Dellatifa*, 357 F.3d 539 (6th Cir. 2004). There, an inmate alleged that a correctional officer repeatedly banged and kicked his cell door, threw his food trays through the bottom slot of the cell door so hard that the top flew off, made insulting remarks, growled and snarled through the window, smeared the window so that the inmate could not see out, and jerked and pulled him when escorting him from his cell. The Sixth Circuit held that the alleged actions, although "shameful and utterly unprofessional," did not violate the Eighth Amendment. *Id*. at 546. Similarly, the Seventh Circuit held that a correctional officer spitting on a prisoner does not rise to the level of a constitutional violation. *DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988).

This is not to say that unprofessional behavior is acceptable or that it should go unremedied. The prison provides a grievance process and has an internal employee disciplinary system. However, the Constitution is reserved for more serious matters. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Accordingly, Plaintiff's harassment claim is

**MEMORANDUM ORDER  12**

subject to summary judgment.

## II.

## MOTIONS TO STRIKE AND EXTEND TIME

Defendants ask the Court to strike Plaintiff's Response to Motion for Summary Judgment (Docket No. 105), asserting that it was filed late (Docket No. 109).  Because Plaintiff is a layperson and an inmate, the Court will allow him an extension of time.  Defendants' Motion is denied. Plaintiff's Motions for Extension of Time (Docket Nos. 102 & 104) are granted.  Plaintiff's recent Motion for Extension of Time (Docket No. 110) is moot, as the Court has considered all of Plaintiff's filings to date, including his overlength briefing, and no further briefing is necessary.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motions for Extension of Time (Docket Nos. 102 & 104) are GRANTED, and Plaintiff's Motion for Extension of Time (Docket No. 110) is MOOT.  The Court has considered all of Plaintiff's submissions.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Strike (Docket No. 109) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 84) is GRANTED on all claims except for the following: (1) the

**MEMORANDUM ORDER  13**

claim against John Doe I (Earl Callahan) for his alleged failure to provide medical care when he merely peered in Plaintiff's window on March 19, 2002; (2) the claim against Sergeant Talley and John Doe II for their examination of Plaintiff with a flashlight as a failure to provide adequate medical care on March 19, 2002; (3) against Officer Acree for ignoring his verbal requests for medical care on March 21, 2002; and (4) against Sergeant Payton for placing the medical request form in his pocket and going to lunch rather than acting on it on March 21, 2002.

IT IS FURTHER HEREBY ORDERED that Plaintiff's request to amend the Complaint to identify John Doe I as Earl Callahan is GRANTED. The Court shall consider the Complaint amended. Amending the Complaint to add Officer Dietz would be futile, as set forth above, and that request is DENIED. If Plaintiff is able to identify John Doe II (the officer who assisted Talley in the flashlight examination of Plaintiff), he may file an amended complaint within the next sixty (60) days. Otherwise, the claim against John Doe II shall be dismissed.

IT IS FURTHER HEREBY ORDERED that Defendant John Doe I, whose true name is Earl Callahan, shall be allowed to waive service of summons by executing, or having his counsel execute, the Waiver of Service of Summons as provided by Federal Rule of Civil Procedure 4(d) and returning it to the Court within thirty (30) days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(b). Accordingly, the Clerk

**MEMORANDUM ORDER  14**

of Court shall forward a copy of the Complaint (Docket No. 4), a copy of this Order, and a Waiver of Service of Summons to the following on behalf of Earl Callahan:

> Sherrill Gantreaux
> Corrections Corporation of America (CCA)
> 10 Burton Hills Boulevard
> Nashville, TN 37215.

Should CCA determine that the individuals for whom it was served are not, in fact, its employees or former employees, or that its attorney will not be appearing for particular former employees, it should notify the Court's Pro Se Unit immediately in writing (Pro Se Unit, U.S. District Court, 550 West Fort Street MSC 042, Boise, ID 83724) or via the CM/ECF system, with a copy to Plaintiff.

IT IS FURTHER HEREBY ORDERED that, if Earl Callahan chooses to file an answer in this case, he shall file any motion for summary judgment within ninety days after the filing of his answer.  Discovery may ensure during the ninety-day period as it relates to claims against Earl Callahan and John Doe II only.

IT IS FURTHER HEREBY ORDERED THAT Plaintiff and counsel for all answering Defendants who remain in this case (including counsel for Earl Callahan) shall contact the Court's ADR Coordinator, Denise Asper, Esq., in writing at 550 West Fort Street, MSC 042, Boise, Idaho 83724, to suggest an appropriate form of ADR and the timing of ADR in this case.

**MEMORANDUM ORDER  15**



DATED: **August 3, 2005**

/s/ Mikel H. Williams
_____
Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM ORDER  16**